R. S. BASS ET AL. v. R. L. TOLBERT.

Decided June 20, 1908.

**1.—Principal and Agent—Double Agency.**

An agent who is relied upon to exercise, in behalf of his principal, his skill, knowledge or influence, will not be permitted, without his principal's knowledge and consent, to undertake to represent the other party to the transaction. And it makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith. The double agency is a fraud upon the principal in such case, contravenes public policy, and the courts will refuse to enforce a contract growing out of such agency or award damages for its breach.

**2.—Same.**

The weight of authority seems to be in favor of the proposition that the same person may act as the agent of two or more principals in the same transaction if his duties to each are not such as to require him to do incompatible things, or if he acts with the full knowledge and consent of both principals.

**3.—Same—Evidence.**

A contract or agreement between an agent for the sale of land and a prospective purchaser, whereby the purchaser agreed to buy from and through the agent instead of directly from the owner, considered, and held not violative of the agent's duty to his principal.

**4.—Agency—Partnership—Evidence.**

Evidence as to partnership between agents for the sale of land, considered, and held insufficient to support a finding that a partnership existed.

**5.—Same—Statement of Another—Acquiescence.**

Acquiescence, to have the effect of an admission of the party to be affected thereby, must exhibit some act of the mind and amount to voluntary demeanor or conduct of the party. It must clearly appear that the language or conduct in question was fully understood by the party sought to be bound thereby, before any inference can be drawn from his silence.

Appeal from the County Court of Hunt County. Tried below before Hon. J. W. Manning.

*G. C. Groce* and *Pierson & Starnes,* for appellants.—The court erred in overruling defendant's general demurrer to plaintiff's petition, because the same showed no cause of action against defendant, or none of which the court should take jurisdiction, in this: (1) From said petition it appears that R. S. Bass was the agent of E. Griffith to sell his land, and was under legal obligation to obtain therefor the highest price obtainable, and the agreement alleged between plaintiff and said Bass, if made, was one violative of the duty of said Bass to his principal, Griffith, and an agreement which a court should in nowise enforce, or take jurisdiction or cognizance of. (2) From said petition it appears that plaintiff knew Bass to be the agent of Griffith for the disposition of Griffith's property, and hence, that it was improper for Bass to make or enter into any agreement as he alleges, and hence such agreement, if made, is one contrary to public policy, violative of the duty of an agent to his principal, and one which no court should enforce. Armstrong v. O'Brien, 83 Texas, 648-9; Oscanyan v. Arms Company, 103 U. S., 261; Wardell v. Union Pac. Ry. Co., 103 U. S., 658; Woodstock Iron Co. v. Richmond & D. Extension Co., 129 U. S., 643; West v. Camden, 135 U. S., 521; Meachum on Agency, sections 67, 643, 644, 798; Walker v. Osgood, 98 Massachusetts, 348; Rice v. Wood, 113 Massachusetts, 133; Holcolm v. Weaver, 136 Massachusetts, 265; Young v. Hughes, 32 New Jersey Eq., 372; Gann v. Zettler, 60 S. E., 283; Ramspeck v. Patillo, 69 Am. St. Rep., 197.

The trial court erred in rendering a judgment against defendants W. A. Malcolm and T. J. Stroud. It further erred in refusing a new trial as to them, because the evidence shows that there was no partnership between them and defendant Bass in respect to any contract, if any was made between plaintiff and said Bass; and that they had no interest in or connection with the contract between plaintiff and said Bass alleged in said petition, if any such contract was made. Hayden Hardware Co. v. Ramsay, 14 Texas Civ. App., 185.

*Thompson & Mead,* for appellee.—The contract sued upon was not against public policy, but was a contract which appellee had a legal right

to make and which the courts should uphold. Chase v. Veal, 83 Texas, 333.

There was evidence introduced warranting a judgment against Malcolm and Stroud, and also showing a partnership with R. S. Bass. Stevens & Andrews v. Gainesville Bank, 62 Texas, 499; Henderson v. San Antonio & M. G. Ry. Co., 17 Texas, 560; Gulf, C. & S. F. Ry. Co. v. Pittman, 4 Texas Civ. App., 166; Ft. Worth Pub. Co. v. Hitson & Reed, 80 Texas, 216; Prather v. Wilkens, 68 Texas, 190.

TALBOT, ASSOCIATE JUSTICE.—This suit was filed by appellee, R. L. Tolbert, in the County Court of Hunt County, on August 20, 1907, against appellants, R. S. Bass, W. A. Malcolm and T. J. Stroud. The petition alleged, in substance, that one Griffith, on and prior to August 14, 1907, was owner of a tract of land in said Hunt County, and certain mules, farming tools, etc., and an interest in a growing crop upon such land. That on the 14th of August, 1907, appellee learned that said Griffith desired to sell such land, and other property, and made efforts to buy the same. That before such efforts by him, appellee, said Griffith, had listed his land with appellant Bass for sale, agreeing to pay Bass a commission therefor. That at this time Bass was engaged in buying and selling lands in Hunt and other counties on commission, and appellants Malcolm and Stroud were engaged in a similar business in Ellis County, and that there was some arrangement, the details of which were unknown to plaintiff, by which Malcolm and Stroud became partners in the land business; that Malcolm and Stroud would furnish buyers for lands in Hunt County, listed with Bass, and when a sale was made that the commissions would be divided; and that there was a further arrangement that appellants would, at times, jointly purchase lands and then sell the same for their own mutual profit. That after appellee had sent word to Griffith that he wished to buy his land, appellant Bass learned that appellee was thinking of buying said land, and advised appellee that said land was listed with him for sale for a commission, and that in case Griffith sold it direct that he would get no commission, and that he asked appellee to make the trade through him, and represented that he could purchase the land through him, Bass, cheaper than he could from Griffith direct, as he, Bass, had Griffith bound up under a contract to sell the land $2.50 per acre cheaper than Griffith would sell it to appellee. That the land was listed with him at $47.50 per acre. That Griffith was asking for the land and other property $2,850, the buyer to pay $72 interest on a loan on the land, and that Bass told appellee that he would guarantee to buy the land for him at $2,750 if appellee would let him, Bass, make the trade, and thereby get his commission.

It is further alleged, in substance, that, relying on these representations by Bass, appellee agreed not to attempt to buy the land from Griffith and to allow Bass to buy it for him, authorizing the payment of $2,850 for the property if it could not be bought for less; that the $2,850 proposition was submitted to Griffith, who declined the same unless the $72 interest before mentioned was also paid, and that, pending negotiations in that regard, Bass got in communication with appellants, Malcolm and Stroud, with the result that they, Bass, Malcolm and Stroud, themselves, purchased the land and other property from

Griffith, and took title to themselves, by which appellee claimed to have been damaged in the sum of $1,000, for which he sued. By supplementary petition it is alleged that, if appellants were not partners in fact in the transaction mentioned, that Bass was acting in the purchase of said land as the agent for the other appellants, by reason whereof they were liable for appellee's damage.

The defendants, Malcolm and Stroud, filed a plea of privilege, which was subsequently overruled, and all of the defendants answered by exceptions, general and special; a general denial and a denial under oath of partnership, as alleged. The exceptions of defendants, general and special, were overruled, and on a trial before the court plaintiff recovered a judgment against all of the appellants for $712.50; and a motion for a new trial having been overruled, an appeal to this court was duly perfected.

The first assignment of error complains that the trial court erred in overruling defendants' general demurrer to plaintiff's petition. The proposition advanced under the assignment, although presented in several different forms, is to the effect that the agreement, as alleged by appellee Tolbert in his petition, shows on its face that the same was inconsistent with appellant Bass's duties and obligations to his principal, Griffith, a conspiracy to defraud the said Griffith, and, if there was any such agreement, the same was illegal and void as against public policy, and no cause of action could arise thereon in favor of Tolbert for the breach of the same. It is well settled that an agent who is relied upon to exercise, in behalf of his principal, his skill, knowledge or influence, will not be permitted, without his principal's knowledge and consent, to undertake to represent the other party to the transaction. And it makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith; the double agency is a fraud upon the principal in such case, contravenes public policy, and the courts will refuse to enforce a contract growing out of such agency or award damages for its breach. Armstrong v. O'Brien, 83 Texas, 635; Mech. on Agency, section 798. A person, however, may act as the agent of two or more principals in the same transaction, if his duties to each are not such as to require him to do incompatible things, or if he acts with the full knowledge and consent of both principals. There is some conflict in the decisions upon the last-named exception to the general rule, but it seems that in such cases the weight of authority is in favor of the validity of the transaction. Mech. on Agency, section 644, and cases cited in note.

The decision of the question in the case at bar turns upon the character of the pleading. It was alleged, in substance, that Griffith, the owner of the land which appellee desired to buy, had listed the land with appellant Bass for sale; that Bass, learning of appellee's desire to purchase the land, requested that he, Bass, be allowed to make the trade for appellee; that he, Bass, could buy the land cheaper than appellee could buy it himself, and could also get his commission from Griffith for making the sale, which would amount to $75; that Bass informed appellee that he had Griffith bound up by contract to sell the land $2.50 per acre cheaper than Griffith would sell it to appellee; that the price Griffith was asking for the land and other property was $2,850, and the buyer

to pay, in addition thereto, about $72 interest due on a loan secured by a lien on the land; that appellee then agreed that he would not attempt to buy the land direct from Griffith, but would allow appellant Bass to buy it for him, and that he authorized Bass to offer as much as $2,850 for the property if it could not be bought for less. It was further alleged that Bass agreed that, if he could not get the land for appellee at the price stated to him, that he would submit Griffith's proposition to appellee, and not close the trade with any other party until appellee was given an opportunity to take the property at Griffith's price; that Bass saw Griffith, and informed appellee that Griffith refused to take less than $2,850 for the property, and the buyer to pay the $72 interest due on the loan; that at the same time Bass informed appellee that he had an agreement with Griffith by which he could hold the offer open until the next day; that appellee then told Bass that he would pay Griffith the price he asked if they could not get the land cheaper, and that he would let Bass know the next day at one o'clock p. m.

We think it fairly appears from these allegations that it was neither intended nor contemplated by either appellee or Bass that the land should be purchased from Griffith under circumstances of which he was not fully aware, or at a price not fixed by him. It was not alleged that appellee was to pay Bass anything. Griffith had promised to pay him a commission of $75 to find a buyer for the land, and appellee simply agreed to purchase through Bass instead of going to Griffith in person. It is true Bass urged, as an inducement to this, that he could buy the land for appellee cheaper than appellee could get it from Griffith direct, but in this connection he told appellee, as shown by the pleading, that he had a contract with Griffith which would enable him to do so. If this allegation is true, and it must be so regarded for the purposes of the demurrer, then the price at which Bass proposed to get the land for appellee, if he would buy through him, was not one fixed by Bass against the interest of Griffith, but one fixed or agreed to by Griffith in his contract with Bass. As has been seen, the allegation is that he, Bass, "had Griffith bound up under contract to sell the land $2.50 per acre cheaper than Griffith would sell it to plaintiff," which corresponds with the amount Bass said he could procure the land for. The clear inference from the allegations of the petition is: that Tolbert and Bass both understood and intended that Griffith should be consulted about the price of the property, and that the same should be agreed to by him before the sale contemplated was consummated. We conclude the demurrer was properly overruled.

Appellants' second assignment of error is to the effect that the trial court erred in rendering judgment against the defendants, Malcolm and Stroud, and in refusing to grant them a new trial, because the evidence shows there was no partnership existing between them and the defendant Bass, in respect to any contract that may have been entered into between appellee and the said Bass, in regard to the purchase of the land in question, and that they had no interest in any such contract. This assignment we believe to be well taken. The strength of the testimony upon this phase of the case is as follows: Appellee testified that Bass told him that he had an arrangement with Malcolm and Stroud by which he, Bass, would list Hunt County land for sale, and Malcolm and

Stroud find buyers in Ellis County, and the commission would be divided among them. Bass testified that he had an agreement with Malcolm and Stroud to divide commissions with them on every sale of land in Hunt County to buyers furnished by them from Ellis County, but that Malcolm and Stroud had no interest in sales of Hunt County land made by him to purchasers found by him; that he only divided commissions with them on sales made to parties that they secured in Ellis County of lands situated in Hunt County. Bass further testified that he never thought of buying the Griffith land until Tolbert had flatly refused to meet Griffith's terms. That Malcolm and Stroud knew nothing about Tolbert, nor had there been any negotiations with him about Griffith's land until after he, Bass, had bought the property, and that, had he sold the land to Tolbert, that Malcolm and Stroud would have had no interest in the transaction whatever. Upon being recalled, appellee testified that Bass said, in speaking of Malcolm and Stroud: "We have a partnership; I furnish the land and they furnish the buyers, and we split the commissions." Stroud testified that he and Malcolm were partners in the real estate business in Ellis County; that they had an arrangement with Bass by which they get buyers in Ellis County to buy lands that Bass had listed in Hunt County, and when Bass made a sale of land in Hunt County to a buyer furnished by them from Ellis County they would divide the commission on such sale. That on the night of August 15, 1907, at 7:30 o'clock or later, Bass 'phoned to him, in substance, that the Griffith property was for sale at a bargain, and asked him to go in with him and purchase it, and he authorized Bass to go ahead with the matter on his (Bass's) own judgment, and agreed to go up from Waxahachie the next morning, which he did. That Bass had closed the trade before he arrived, and that up to that time he had never seen Tolbert, and did not know him, nor had he had anything to do with the deal.

This testimony we regard as wholly insufficient to show that a partnership did exist between Bass and Malcolm and Stroud in the matter of the sale for, or purchase of the land from, Griffith; or that Bass, in making the contract with appellee, as alleged, was the agent of the said Malcolm and Stroud, or otherwise so associated with them in the sale or purchase of lands situated in Hunt County as to authorize the judgment rendered against them. Aside from the statement of appellee that Bass told him, in speaking of Malcolm and Stroud, that " we have a partnership; I furnish the land and they furnish the buyers, and we split the commissions," the evidence seems to conclusively show it was only in the event Malcolm and Stroud furnished a buyer from Ellis County of land held for sale by Bass in Hunt County that they had any interest whatever in the transaction. In that event it was agreed by Bass that they should receive one-half of the commission paid him. But they had no interest whatever in sales made by Bass to purchasers procured by him.

Was the declaration of Bass, that "we (speaking of himself, Malcolm and Stroud) have a partnership; I furnish the land and they furnish the buyers, and we split the commissions," sufficient to justify the judgment of the court against Malcolm and Stroud? We think not. It does not appear that the statement imputed to Bass, if made in the

presence of Stroud, was heard by him. It was shown that a conversation occurred between appellee and Bass in the latter's office at Greenville, after the sale of the land by Griffith, and that Stroud was in the office at that time, but it does not appear that the statement quoted was heard by Stroud. And it is not pretended that Malcolm was present at that or any other time, and heard any such statement. To have authorized a finding that a partnership existed between Bass and Malcolm and Stroud with respect to the alleged contract and Bass's dealing with appellee, upon the statement referred to, it was necessary to show that said statement was heard by Stroud or Malcolm and not denied. Acquiescence, to have the effect of admission of the party to be affected thereby, "must exhibit some act of the mind and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct, or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, before any inference can be drawn from his silence." 1 Greenl. on Ev., section 197. Again, Mr. Greenleaf says: "The mere silence of one, when facts are asserted in his presence, is no ground of presuming his acquiescence, unless the conversation was addressed to him under such circumstances as to call for a reply." Section 197a. This latter statement of the law seems to be a qualification of a former rule on the subject which permitted one's silence to be construed as a virtual assent to all that was said in his presence. The reason given for the change is that the former rule was susceptible of great abuse, and called for a course of conduct which prudent and quiet men do not generally adopt. Green. on Ev., section 197a. While there is evidence in this case that appellant Stroud was in Bass's office when the declaration claimed by Tolbert was made by Bass, it clearly appears that the conversation between Bass and Tolbert, in which such declaration was made, was a very animated and angry one, and the only foundation for the belief that Stroud heard it, and fully understood its import, is his presence during the conversation. Under the rule above announced, we think the court was not warranted, under such circumstances, in finding that Stroud not only heard the statement of Bass, but that he fully understood and acquiesced in it, a finding of all which was essential to justify the inference of partnership as declared by Bass. This being true, the evidence was insufficient to establish the finding of the court that Malcolm and Stroud were partners of Bass in the transaction out of which the suit grows, and the judgment against them must be reversed.

The other assignments of error complain of the insufficiency of the pleadings upon the measure of damages, and the inadmissibility of certain testimony, by reason thereof, to establish the damages allowed by the court. Also, that the evidence was insufficient to warrant the amount of the damages allowed. We shall not enter upon a discussion of these assignments. It is enough to say that they have been considered, with the conclusion reached that they point out no reversible error. The pleading was not, perhaps, as definite as it might have been, but was sufficient in a suit of this character.

The evidence is sufficient to sustain the judgment against appellant Bass, but insufficient to sustain it as to Malcolm and Stroud. The case was tried without a jury, and the facts seem to have been fully devel-

oped. It is therefore ordered that the judgment of the court below be affirmed as to Bass, and reversed and here rendered for appellants Malcolm and Stroud.

*Affirmed in part and reversed and rendered in part.*