## HARRIS MILLINERY COMPANY v. A. W. BRYAN ET AL.

### Decided March 5, 1910.

**1.—Contract—Acquiescence in Statement—Evidence.**

Acquiescence, to have the effect of an admission of the party to be affected thereby or to constitute a concurrence in what is being said or done by another, must exhibit some act of the mind and amount to voluntary demeanor or conduct of the party sought to be bound thereby; and it must plainly appear that such conduct was fully known or the language fully understood by such party before any inference of assent can be drawn from his silence.

**2.—Venue—Contract to Deliver Goods—Insufficient Evidence.**

The mere fact that the manager of a private corporation was present in the room when and where the attorney for the purchaser of goods from the corporation dictated to the bookkeeper of the corporation an agreement, endorsed on the invoice of the goods, that the goods were to be delivered by the corporation at the residence of the purchaser in another county, was not sufficient to support a finding that the manager heard and assented to the agreement as to the delivery of the goods, and hence insufficient to fix the venue in the county of the purchaser's residence in a suit for damages for failure to deliver the goods as per contract.

ON REHEARING.

**3.—Plea of Privilege—Practice.**

Under the Act of the Thirtieth Legislature (Laws, 1907, p. 249) when a plea of privilege to be sued in a different county is sustained, the suit should not be dismissed but an order should be entered transferring the suit to the county and court to which the venue was changed.

Appeal from the County Court of Hunt County. Tried below before Hon. J. W. Manning.

*Looney & Clark,* for appellant.

*B. Q. Evans,* for appellees.

TALBOT, Associate Justice.—The appellee, Mrs. A. W. Bryan, who was then Miss V. G. Kennedy, in June, 1908, brought this suit in the County Court of Hunt County, Texas, against the appellant, Harris Millinery Company, a private corporation doing business and domiciled in the city of Dallas, Dallas County, Texas, and Henry Pollock, also residing in said last named county, and the First National Bank of Greenville, having its principal office and place of business in the city of Greenville, Hunt County, Texas, to recover damages alleged to have been sustained by her on account of the failure of appellant to comply with an alleged contract to deliver certain millinery goods in Greenville on the night of February 28, 1908. The plaintiff married the appellee, A. W. Bryan, pending the suit and they thereafter jointly prosecuted the same.

The petition alleges, so far as is necessary to state, that on the 28th day of February, 1908, V. G. Kennedy (now Bryan) purchased from appellant, Harris Millinery Company, at Dallas, Texas, a bill of goods invoicing $439.66, and fifty hat boxes and one hundred hat bags for the sum of $300 cash and a note for $50 to be thereafter executed; that appellant contracted in writing to deliver said goods in Greenville, Texas, on the night of February 28, 1908, but failed and neglected to deliver said goods, as contracted, for a period of about twelve days thereafter, to plaintiff's damage in the sum of $91 for loss of time for herself and trimmer and for house rent paid during the time before said goods were delivered. That when her said goods were delivered they checked short items aggregating $67.50 of the value of $100; that she returned to defendant items of goods aggregating $13.95; that the flowers included in the bill purchased aggregated $80, but that after plaintiff had paid for the

goods other and cheaper flowers were substituted by appellant and that the flowers received were worth no more than $30, to plaintiff's damage in the sum of $50; and that there was a considerable difference in the value of the other goods represented by the invoice and those shipped, cheaper goods having been substituted for those selected and shown by the invoice, and that the goods received were worth at least fifteen percent less than those that should have been shipped. It was further alleged that plaintiff owed appellant a note for $50 for a previous bill of goods; that this note had been transferred by appellant to Henry Pollock for the purpose of cheating and swindling plaintiff out of said note, and that the same was then in the hands of the First National Bank of Greenville for collection, and that upon a settlement between plaintiff and the Harris Millinery Company, when the amount of said note has been deducted, the said defendant will still owe plaintiff a sum of money more than $200; and that the transfer of said note by Harris Millinery Company to Henry Pollock was done to avoid a settlement of plaintiff's just claim against the Harris Millinery Company. This suit was dismissed before the trial as to both Pollock and the First National Bank of Greenville.

The appellant, Harris Millinery Company, filed a plea of privilege to be sued in Dallas County, and, subject thereto, a general demurrer, general denial and special answer not necessary to state. The case, including appellant's plea of privilege, was tried before a jury and resulted in a verdict and judgment for plaintiffs against the plea of privilege, and against appellant for the sum of $250.

Appellant's motion for a new trial having been overruled, he perfected an appeal to this court, and his first assignment of error is as follows: "The undisputed evidence showed that the County Court of Hunt County had no jurisdiction of the cause against appellant, and its plea of privilege to be sued in the county of its domicile should have been sustained. The evidence relied on to show that the contract was to be performed in Hunt County, showed that, if any such contract was made, it was dictated to appellant's bookkeeper by plaintiff's lawyer after the contract for the sale of the goods had been completely made, and the bookkeeper had no authority to make such a contract, did not intend or understand that same was being made, and thought that he was merely writing a receipt for the money paid. Besides, there was no consideration for such contract, and the court erred in refusing to give defendant's special charge No. 7." We think the assignment must be sustained. The evidence conclusively shows that the appellant's domicile was in Dallas County; that it never had an office or agent of any character in Hunt County, and it was insufficient to authorize the finding of the jury that the contract was to be performed—that is, the goods delivered—in Hunt County. The material testimony bearing upon the latter question is, in substance, that the appellee, Mrs. Bryan, selected the goods bought by her from appellant on the 26th and 27th days of February, 1908, telling appellant to get the goods out as quickly as possible. They were to be shipped by express and appellee agreed to pay the express charges and for the goods $350. After selecting the goods appellee

went to her home in Greenville and then arranged with appellant to pay it $300 cash and give her note for $50 for the goods, and sent her attorney, Mr. B. Q. Evans, with the $300 to Dallas to make the cash payment.

Mr. Evans testified: "With reference to that invoice—I had the invoice Sunday. I lost that invoice, and I caused a search to be made; had Mr. Bryan to examine the buggy I was in, and all the places I had any recollection of being, and I am not able to find it. However, the invoice was exactly like that, except the memorandum. I described it in my petition and made it a part of my petition in this case, and the reason I didn't put it in was the reason that when I made this amended petition, I overlooked it or something. Now, the memorandum, it was in the form of a receipt. It started at the top, $300 cash, $50 to be paid June 15. I think it gave the amount of the invoice as $439.66. I believe that was it, one hundred hat bags, fifty hat boxes, one hundred paper bags. These goods to be delivered to Greenville tonight. H. M. Co. That was on the invoice. About Harris, he was sitting there in the chair. It was done by the bookkeeper. I don't know anything about his not knowing it, but I know that was the understanding that the agreement was made and put down on the back of the invoice, 'these goods to be delivered to Greenville tonight.'" He further testified that the memorandum which he says was endorsed on the inventory of the goods by appellant's bookkeeper was dictated by him and that he knew exactly its legal effect. That appellee agreed to pay $350 for the goods over the 'phone; that she could not raise but $300 of the amount and that he came to Dallas to bring that amount of money and arrange for the balance due on the goods until appellee could pay it. That was the cause of his trip to Dallas.

Jones, appellant's bookkeeper, testified: "I am connected with Harris Millinery Company. I am just merely an employe. I don't own any stock in the company. I remember the night you were over, Mr. Evans. I was the bookkeeper. I think I made an entry of whatever you paid on the bill, but don't remember any entry about paper bags or anything of that kind. My recollection is that I receipted in the invoice for the amount of money paid. I probably showed there what the balance of the consideration was to be. That is my recollection. I don't remember about anything else on it. My recollection is that it was in the form of a receipt, that I put down the amount of money I received and the deduction paid on the bill. I probably signed the receipt, H. M. Co., which means Harris Millinery Company. To my recollection I stated nothing to the effect that the goods were to be delivered in Greenville;" that he and Mr. Evans had not made any contract as to whether to deliver the goods at Greenville; that he had never heard of anything of that kind; that there was something said about shipping the goods that night.

It will be noted that the ground relied on to authorize the bringing of the suit in Hunt County and to sustain the jurisdiction of that court, is that by the memorandum endorsed on the inventory of the goods at the dictation of Mr. Evans, "These goods to be delivered to Greenville tonight," appellant thereby contracted in writing

to perform the contract in Hunt County. This position, we believe, can not be maintained. The goods had been selected, invoiced and placed in the shipping room and the terms of the trade agreed to before Mr. Evans came to Dallas to make the cash payment of $300. Mr. Harris, the manager of appellant, and with whom it appears the contract of sale was made, testifies positively that he "was not to deliver the goods at Greenville, but to the express company," and Mr. Evans, upon whose testimony alone appellee relies to prove that the goods were to be delivered by appellant at Greenville, does not swear, as we understand his testimony, that he had any such understanding or agreement with Harris or anyone else except the bookkeeper, and there is no evidence tending to show that the bookkeeper, who the undisputed testimony shows was a mere employe of appellant, had authority to make such a contract, if he did make it, and bind appellant thereby, and such authority can not be implied from the mere fact of employment. It is elementary that there is no contract unless the parties thereto assent; and they must assent to the same thing in the same sense. This is true whether the contract be in writing or merely verbal. (1 Parsons on Contracts, 9th ed., page 475.) That appellant, by anyone authorized to bind it, assented to the agreement embodied in the memorandum endorsed on the invoice of the goods sold to appellee, is not shown by any testimony that would justify such a conclusion. The fact that Mr. Harris was sitting in the room while appellee's attorney, Mr. Evans, was dictating and the bookkeeper writing the memorandum on the inventory, is not sufficient evidence of such assent. It does not appear that Mr. Harris heard and understood the purport of the language used by Mr. Evans. To have authorized a finding that Harris assented to such a contract as is embraced in said language it was necessary for appellees to show that the language was heard by Harris and that he made no objection thereto. Acquiescence, to have the effect of an admission of the party to be affected thereby or to constitute a concurrence in what is being said or done by another, "must exhibit some act of the mind and amount to voluntary demeanor or conduct of the party sought to be bound thereby. And, whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known or the language fully understood by such party before any inference can be drawn from his silence." (Bass v. Tolbert, 51 Texas Civ. App., 437 (112 S. W., 1077); 1 Green. on Ev., sec. 197.) Again, Mr. Greenleaf says: "The mere silence of one, when facts are asserted in his presence, is no ground of presuming his acquiescence unless the conversation was addressed to him under such circumstances as to call for a reply." Sec. 197a. Now, while there is evidence, as heretofore shown, that Harris, the general manager of appellant, was sitting in a chair and perhaps near Evans and Jones, the bookkeeper (the distance not appearing), when Evans dictated the memorandum in question, yet it clearly appears that the dictation and anything said in reference thereto was addressed to Jones, and the only foundation for the belief that Harris heard anything that was said in that

connection and understood its import, is his presence there. Under such circumstances, and. the rule announced above, the jury was not warranted in finding that Harris not only heard what passed between Evans and Jones in relation to the memorandum endorsed on the inventory of the goods sold to appellee, but that he fully understood and acquiesced therein. This being true, the trial judge, upon the conclusion of the evidence, should have withdrawn the case from the jury and sustained appellant's plea of privilege to be sued in Dallas County.

The judgment of ·the lower court is therefore reversed and the cause dismissed.

### ON REHEARING.

Appellees' motion for rehearing is overruled. We erred, however, in dismissing the case. The Act of the Thirtieth Legislature amending chapter 4 of title XXX of the Revised Statutes by adding article 1194c, which was overlooked when the original opinion was written, provides: "That whenever a plea of privilege to the venue to be sued in some other county than the county in which the suit is pending shall be sustained, the court shall order the venue to be changed to the proper court of the county having jurisdiction of the parties and cause, and that the clerk shall make up a transcript of all the orders made in said cause, certifying ·thereto officially under the seal of the court, and transmit the same with the original papers ·in the cause to the clerk of ·the court to which the venue has been changed." It is therefore ordered that the judgment heretofore rendered in this cause in this court dismissing said cause be set aside, and that judgment be entered therein changing the venue of the same to the County Court at Law of Dallas County, Texas, with instructions to the clerk of the County Court of Hunt County, Texas, to make up the transcript and transmit the same, together with the original papers, to said County Court at Law of Dallas County, in accordance with the provisions of the above mentioned Act.

It is further ordered that the judgment of this court be certified to said County Court of Hunt County for observance.

*Reversed and remanded.*