## STEELE v. BUTLER et al.　(No. 1737.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 19, 1921.)

1. Brokers ⚖➡105—Loan brokers may become agents of lender for purpose of notice.

Where agency of brokers is special, being clearly defined by writings and limited to procuring a loan on land, this would not prevent them from representing the lender appointing them his agents with knowledge of such special agency, and he would then be bound by their knowledge of the transaction, in the absence of evidence showing collusion and fraud of the brokers and borrowers.

2. Brokers ⚖➡8(3)—Evidence held sufficient to establish agency.

In an action to cancel promissory note and deed of trust delivered to borrowers' agents, on the ground that they had never paid the money for the loan, evidence *held* to show that such agents were also the agents of the lender.

3. Brokers ⚖➡103—Lender's cross-action on notes held ratification of brokers' acts in procuring loan.

In a borrowers' action to cancel their note and trust deed delivered to their brokers, also lender's agents, who failed to pay them the money, lender's cross-action to collect the note, after full knowledge of all the circumstances, amounted to ratification of their acts.

4. Brokers ⚖➡106—Lender held not to have discharged burden of showing collusion between borrowers and brokers.

In borrowers' action to cancel trust deed and note delivered to brokers, who represented both parties, but failed to deliver the money, *held* that defendant lender had not discharged the burden of alleging and proving fraudulent collusion between the borrowers and the brokers, and hence was bound by brokers' knowledge of the character and circumstances of the transaction.

5. Subrogation ⚖➡21—Brokers procuring loan held not subrogated to rights of holders of vendor's lien note until payment.

Brokers, agents of both borrowers and lender in making a loan secured by a note and trust deed sought to be canceled because they failed to pay over the money to the borrower, can-

not be subrogated to rights of holders of original vendor's lien notes on the mortgaged land until they have satisfied them, and the lender likewise cannot claim subrogation, since he is chargeable with the knowledge of all facts in the possession of his agents.

**6. Brokers ⊕100—Lender as principal held chargeable with notice of extent of agency for borrowers.**

Where a lender knew that brokers were borrowers' special agents to procure loan and held borrowers' note in such capacity, he, having also appointed them his agents, is chargeable with notice of the extent of their authority, and whether they were properly executing the powers given them in the loan application and a deed of trust.

**7. Brokers ⊕106—Lender's good faith held for jury in borrowers' suit to cancel note on not receiving proceeds.**

In an action by borrowers to cancel a note and a deed of trust on the ground of never having received the money thereon from brokers acting as agents of both parties, notwithstanding deed of trust recites that the brokers had paid off original vendor's lien notes, facts *held* to require submission to the jury of the issues of lender's good faith and notice.

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Suit by J. H. Butler and wife and others against L. L. Steele. Judgment for plaintiffs, and defendant appeals. Affirmed.

Leak & Fitzgerald, of Memphis, for appellant.

T. T. Clark, of Memphis, for appellees.

HALL, J. J. H. Butler and wife and W. A. Anthony and wife instituted this suit against appellant to cancel a promissory note and a deed of trust conveying certain lands in Hall county to secure the note. The amended petition, in substance, alleges that on or about October 7, 1918, plaintiffs executed their note in the sum of $1,500, bearing interest at 7 per cent. payable to Scott & Blackmer, of Hobart, Okl.; that said note was due December 1, 1923, and provided for 10 per cent. attorney's fees; that to secure said note they executed a deed of trust on the lands described therein, which they say is their homestead; that Scott & Blackmer represented to them that they would loan plaintiffs $1,500 upon the terms and conditions specified in the note and deed of trust; that Scott & Blackmer promised to pay plaintiffs the money as soon as said note and deed of trust were executed, and that said note and deed of trust were executed relying upon said representations and promises; that said representations and promises were false, and were made by Scott & Blackmer fraudulently for the purpose of securing possession of said note and deed of trust; that at the time they secured said note and deed of trust Scott &

Blackmer had no money, and were not in a position to secure the money for plaintiffs as they had promised; that they were unable to pay off and secure releases of certain purchase-money notes then existing against the land; that no part of said $1,500 has ever been received, nor has any part of the vendor's lien notes existing against plaintiff's land been paid off or satisfied by Scott & Blackmer; that in pursuance of their fraudulent plans and schemes Scott & Blackmer thereafter transferred said note and deed of trust to L. L. Steele, who at that time had full knowledge and notice of the fraud that had been perpetrated upon plaintiffs by Scott & Blackmer; that he knew at the time that said note was without consideration, and that plaintiffs had never received any part of the $1,500; he further knew that Scott & Blackmer had not taken up or paid any part of the vendor's lien notes outstanding against the land and homestead of plaintiffs; that said notes and the vendor's lien securing them were at that time outstanding and of record in Hall county; that the said Steele did not purchase said notes from plaintiffs, but he intrusted the money for that purpose to Scott & Blackmer; that he sent Scott & Blackmer his check on November 11, 1918, and instructed them to select and assign to him such notes as they might see proper, thereby making said Scott & Blackmer his agents, to select from among their notes the notes that would be later assigned to him; that at that time Scott & Blackmer did not own the note, and for the purpose of defrauding plaintiffs, on or about the——day of December, 1918, and acting as the agent for Steele, transferred to him plaintiff's note, with the intention of defrauding plaintiff, assigning to said Steele whatever interest Scott & Blackmer at that time may have had in said note; that at said time Scott & Blackmer had no right, title, or interest to the note or to any lien on the land; that they had not advanced any purchase money nor secured the release of the vendor's lien; that because said lien was not paid off neither Scott & Blackmer, nor Steele, are entitled to be subrogated to the rights of the original vendor, Samuel Davidson, in the land.

By an amended original answer, which contains a general and special exception, and a general denial, appellant, Steele, alleged that on or about the 11th day of December, 1918, he purchased from Scott & Blackmer, for value and without notice of any fraud, the note and deed of trust sought to be canceled by plaintiffs; that he purchased the same in good faith, in due course of trade. By way of cross-action appellant sought to recover the amount of the principal note and several interest notes, and a foreclosure of the lien, evidenced by the deed of trust. He alleged that the first of the interest coupons became

due December 1, 1919, that plaintiffs had failed to pay the same, and by virtue of the authority contained in the deed of trust he had exercised his option and declared the whole of the indebtedness due. By supplemental petition, plaintiffs specially pleaded their homestead exemption, failure of consideration for the notes, and prayed for the cancellation of the notes and mortgage. The case was submitted to a jury upon special issues. The jury found, in effect, that appellant, Steele, had notice when he bought the note that plaintiffs had not received the $1,500, for which it was given, and that he also had notice at that time that the prior indebtedness which the note was given to take up had not been paid off

[1] Under the first three assignments of error appellant insists that these findings are contrary to, and are not supported by, the evidence. The statement of facts is quite voluminous; but for the purposes of this opinion it is sufficient to show that Butler and Anthony, on the 21st day of September, 1918, signed what is designated as "Application for Loan," which recites in part:

"We, the undersigned, J. H. Butler and W. A. Anthony, do hereby appoint Scott & Blackmer, of Hobart, Oklahoma, as our agents to procure for us a loan of $1,500.00 for a term of five years, with interest at seven per cent. per annum, to be paid annually, on the first day of December, secured by first mortgage or trust deed upon the following described real estate in the county of Hall, state of Texas, to wit: * * * Is any part of this property your homestead? This is all we own. * * * Existing Liens: $1,245.00 and interest to Samuel Davidson and $159.00 and interest to Edward F. Swift. Is this loan made for the purpose of paying off purchase money, vendor's lien notes, or any other purchase money indebtedness upon this land or any part of it? Yes. If so, who executed these notes? Samuel Davidson, J. H. Butler, and W. A. Anthony. To whom were they made payable? Edward F. Swift and Samuel Davidson. * * * How many of these notes are Scott & Blackmer to take up and extend? Three for $415.00 each, and one for $159.00. Who is the present owner of them? Samuel Davidson and Edward F. Swift. * * * The foregoing statements are made for the purpose of procuring the loan hereby applied for, and I solemnly declare that they are true in every particular."

W. A. Anthony testified in part as follows:

"I don't remember the exact date that we executed that note—the one that was delivered to Scott & Blackmer. It was back in the fall of the year. We executed three sets of notes. The notes that you show me are the third set. The other two sets were returned to us. This is the only one that we are being sued on. We have not received any consideration for the note sued on."

The deed of trust dated October 7, 1918, and acknowledged by Butler and wife, and Anthony and wife, October 18, 1918, was introduced in evidence, and contains, amongst others, the following recitals:

"The debt secured hereby is for money advanced by Scott & Blackmer, at our special instance and request, to take up, renew, and extend certain purchase money indebtedness against the property herein conveyed in a certain warranty deed, conveying said property, and recorded in vol. 30, p. 491, Deed Records of Hall county, Texas, to which reference is here made. * * * And this transaction is made in renewal and extension of the said purchasemoney indebtedness, and, the said Scott & Blackmer having advanced the sum of $1,500.-00 for the purpose of making said renewals and extensions, they are hereby subrogated to all the rights, liens, powers, title, and equities now and at any time held by the said original vendors, and by the holders and owners of said notes, and a vendor's lien is hereby acknowledged upon the said premises herein conveyed to secure the payment of the said notes this day given by us to the said Scott & Blackmer."

This instrument was filed for record in Hall county on the 20th day of November, 1918. With reference to the recital that Scott & Blackmer advanced the sum of $1,500 for the purpose of making the renewals and extensions of the original liens, Anthony testified:

"At the time those notes were signed Scott & Blackmer represented to us that they were intending to pay off the purchase-money lien notes, as stated therein that they were to take up those outstanding notes. If they had not, we would not have signed the note sued on. The purpose of securing this loan was to take up the two series of notes that were outstanding."

C. R. Webster testified that he was associated with Grundy Bros., in Memphis, Tex., in the loan business, and knew about the transaction in question; that the vendor's lien notes against the land owned by Butler and Anthony, and held by Swift and Davidson, were about to come due, and that Butler and Anthony could not pay them, and applied to his firm for a loan; that the application was sent in to Scott & Blackmer; that the first set of notes signed by Anthony and Butler were not properly executed; they were returned to Anthony and Butler, and a second set, signed by Anthony and wife and Butler and wife, with a lead pencil, were sent in to Scott & Blackmer, and also returned with instructions to have the makers sign a third set of notes in ink, and that the third set of notes is the one involved in this suit; that it is a principal note for $1,500, and a series of interest notes. It was shown that the last notes, being the ones in suit, were executed by the makers and mailed to Scott & Blackmer, at Hobart, Okl., about November 29, 1918. On that date Scott & Blackmer wrote Grundy Bros. and Webster at Memphis as follows:

"In re Butler and Anthony. Gentlemen: It has been necessary to have a third set of pa-

pers executed in this loan, which we regret very much. When this loan was offered us we submitted the application and examiner's report to a new client, who has made an initial order of $10,000, and this loan was purchased by him. We promise an early delivery of all loans ordered, and will thank you to see that the mortgage is recorded promptly and new notes furnished; also complete the title at the earliest possible moment."

Webster further testified that he forwarded the application at the time the loan was first made to Scott & Blackmer; that it was a good while before Davidson was located and an effort made to get an assignment of his notes and lien from him; that Davidson had not been located the 13th day of January, 1919; that he sent Scott & Blackmer an abstract of title to the land, which showed the Davidson and Swift liens. Written assignment of the note and mortgage from Scott & Blackmer to appellant, Steele, was introduced in evidence, dated December 11, 1918. The indorsement shows that it was filed for record by the county clerk of Hall county on December 20, 1918. S. L. Reed, of Hobart, Okl., testified by deposition that he was connected with the firm of Scott & Blackmer about two and one-half years prior to January, 1919; that said firm was engaged in the business of loaning money on city and farm property, selling their loans to investors, bankers, brokers, insurance companies, and private individuals, in the North and East; that the duties of the local agents were to secure applications from borrowers. Appellant, Steele, testified by deposition in part as follows:

"The application, examiner's report, abstract, mortgage, notes, and assignment accompanied the loan when I secured the note and mortgage of Butler and Anthony. I purchased the note which the plaintiffs in this case are seeking to cancel on November 22, 1918, from Scott & Blackmer. No representations were made to me by Scott & Blackmer at the particular time I purchased said note and deed of trust. Several months before Mr. D. A. Scott was in my office, soliciting me to buy their loans, and he said they were all first-class valid mortgages and notes and well secured and safe investments. I paid Scott & Blackmer $1,500.00 consideration for the transfer and assignment of the note and deed of trust which the plaintiff is seeking to cancel. I have never purchased any vendors' liens, only mortgages, in Texas, from Scott & Blackmer. I paid Scott & Blackmer the $1,500 by check on the Galesburg National Bank, payable to Scott & Blackmer, dated November 11, 1918. I sent the money to them, and told them to send me notes and mortgages for it. I made no particular selection of notes, but left it to them. I have had twelve or fifteen transactions of this kind with Scott & Blackmer. The consideration paid by me to Scott & Blackmer for the transfer and assignment of the note and deed of trust above described was $1,500. The transaction by which I purchased said note and deed of trust was consummated at Galesburg, Ill. I carried

on negotiations with D. A. Scott and L. S. Reed. Said note and deed of trust were purchased by me outright, and not taken as collateral on a loan made by me to Scott & Blackmer. I didn't have any knowledge of the transaction between Scott & Blackmer and J. H. Butler and W. A. Anthony other than as the same appeared from the instruments executed by said parties. I paid Scott & Blackmer the sum of $1,500 for the assignment of the note and deed of trust. I didn't know their financial condition at the time I purchased said note and deed of trust from them. I first learned that Butler and Anthony were asserting any rights against the note and deed of trust sought to be cancelled by them about March 1, 1919. I first learned of the financial condition of Scott & Blackmer, that it was bad, and that they were on the verge of failure, on February 24, 1919. Scott & Blackmer made no representations to me at the particular time I purchased said note and deed of trust. My business is not loaning money and buying mortgages on real estate. The following papers accompanied said loan: Application, examiner's report, abstract, mortgage, notes, and assignment. Cairo A. Trimple is attorney for me at this time. Neither I nor the above attorney, nor any other attorney or person for me, ever examined an abstract of title to the land secured by the mortgage of Butler and Anthony. I did not know that the laws of Texas forbade a mortgage on land in the state of Texas which is a homestead of the borrower. I cannot say whether there was not a further statement in my mortgage that this was advanced for the express purpose of paying off two purchase-money notes, one to Edward F. Swift, and one to Samuel Davidson. The mortgage will show. I do not know whether the mortgage recited that there were such outstanding mortgage notes or not. I didn't make any further inquiry as to whether these notes were paid or not. I didn't make any investigation to see whether Butler and Anthony had paid these notes as indicated in said mortgage. I never made any inquiry of any one as to whether this was a complete loan and whether or not Scott & Blackmer had advanced the money to Butler and Anthony, and whether Butler and Anthony had advanced the money to Swift and Davidson, and secured an assignment or release of the purchase-money notes. I didn't make any inquiry of Scott & Blackmer as to the whereabouts of these notes, and didn't make any effort to secure possession of the same to accompany my notes and mortgage. My experience has been quite limited in the buying and handling of securities and notes. I never have my attorney to examine the title to mortgaged property when I take notes secured by mortgages on lands. I didn't know that the title to this particular tract of land was not complete and passed on by the attorneys of Scott & Blackmer until about the time of or after the failure of Scott & Blackmer. I didn't testify that I had never had other business with Scott & Blackmer. I do testify that I didn't know that there were any liens against the land except my mortgage. During the last ten years I have had probably fifteen transactions with loan companies in the purchase and taking assignments of loans from loan companies. I paid Scott & Blackmer for these notes by

check on the Galesburg National Bank, dated November 11, 1918. I sent the money to them, and told them to send me notes and mortgages for it. I made no particular selection of notes, but left it to them. I had full confidence in Scott & Blackmer, is why I didn't make inquiry at the time I took the note and mortgage as to purchase-money liens."

That Scott & Blackmer were the agents of Butler and Anthony is apparent from the recitals quoted above from the application and deed of trust. Their agency, however, is special or particular, in that their authority is clearly defined by the writings, and is limited therein to procuring a loan of $1,500 upon the terms stated. Since the application appoints them agents of the borrower no discussion of this point is necessary. Donnan v. Adams, 30 Tex. Civ. App. 615, 71 S. W. 580.

The fact that Scott & Blackmer were the special agents of the borrower would not, as a matter of law, prevent them from at the same time representing Steele, if when he appointed them he knew that they were the special agents of the borrowers. If he appointed them his agents, with knowledge of the fact that they were the agents of the borrowers, he would be bound, as their principal, in the absence of evidence showing collusion and fraud on the part of the agents and borrowers.

"In the negotiation of loans it is often difficult to determine whether an intermediary is the agent of the borrower or of the lender. Each case must be decided upon its own particular circumstances, and although certain facts have been held to constitute the intermediary the agent of the borrower or lender, as the case may be, these facts are not necessarily conclusive on the question of agency, and will not preclude the alleged principal from showing that the intermediary was actually acting as the agent of the other party, or as the agent of each, but for different purposes. Thus the fact that the application for the loan recites that the intermediary is the agent of the borrower is not controlling, if the facts and circumstances are such as to create an agency in behalf of the lender as a matter of law." 2 C. J. p. 446, par. 44.

"If a money lender employs the intermediary to negotiate loans, to examine the title to property offered as security, to see that the property is discharged from prior incumbrances, to prepare the papers and see to the execution thereof, to pay over the money to the borrower, or to perform other services in regard to the loan, these facts, taken collectively or in various lesser combinations, justify an inference that the intermediary is the agent of the lender. If the lender pays the intermediary's commission, it tends to establish an agency in the lender's behalf; and, if the service is performed at the request and by the direction of the lender, presumptively the agent is his agent, even though the borrower is required to pay for the services." Id. p. 448, § 46.

"It is a general rule, to which there are certain exceptions, that a person may not be the agent of both the contracting parties at the same time, but often the agent of one party to a transaction is appointed by the adverse party as his agent for certain purposes, and each party will then stand in the relation of principal to the agent as to the matters by him intrusted to the agent, and as to those alone." Id. par. 47.

It will be seen from the notes to these sections that there is a lack of harmony in other jurisdictions, but the Texas courts incline to the view that the lender may appoint the borrower agent to also act for him in the transaction. Bass v. Tolbert, 51 Tex. Civ. App. 437, 112 S. W. 1077; Gilliland v. Ellison, 137 S. W. 168; Blair v. Baird, 43 Tex. Civ. App. 134, 94 S. W. 116; Hull v. Eidt-Summerfield Co., 204 S. W. 480.

[2] Steele testified that when the note was sent to him by Scott & Blackmer they also sent the application, which, as above stated, expressly appointed the latter as the agents of the borrowers. He knew they were loan brokers, as he had previously purchased securities from them. It does not appear from the record who paid or was bound to pay the commission due Scott & Blackmer, but Steele testified that he did not examine the abstract of title, nor did he have his attorneys to do so, nor did he inspect or have the papers evidencing the transaction inspected, and from the fact that he paid the money to the agents may be inferred his assent to their authority to pay it to the borrowers. All doubt upon this issue must be resolved against him upon his uncontradicted statement that he sent the money to Scott & Blackmer, and told them to send him notes and mortgages for it. He further states:

"I made no particular selection of notes, but left it to them. I had full confidence in Scott & Blackmer is why I didn't make any inquiry, at the time I took the note and mortgage, as to purchase-money liens."

This evidence and his conduct are sufficient to establish the fact of agency.

[3] Ratification also is shown by his efforts upon cross-action in this suit to collect the note after having full knowledge of all the circumstances. Mechem on Agency (2d Ed.) § 1839.

[4] Steele does not discharge the burden resting upon him to allege and show any fraudulent collusion between the agents and the borrowers, and must, therefore, be bound by the agents' knowledge of the character and circumstances of the transaction. People's Building Loan & Savings Association v. Dailey, 42 S. W. 365.

[5] Scott & Blackmer could not be subrogated to the rights of the holders of the original vendor's lien notes until they had satisfied them. Texas & St. Louis Ry. Co. v. McCaughey, 62 Tex. 271; Kallman v. Ludenecker, 9 Tex. Civ. App. 182, 28 S. W. 579; Sheldon on Sub. (2d Ed.) §§ 70, 118, 127, 248. Since appellant is chargeable with knowledge of all the facts then in possession of his

agents, he cannot claim the right of subrogation. Moreover, he is charged with notice by reason of the recital in the application that the loan was sought for the purpose of taking up and extending the original lien notes, and he further had notice from this, and the abstract of title which accompanied the note and mortgage, that this had not been done.

[6] Since appellant knew that Scott & Blackmer were special agents to procure a loan, and that they held the note in such capacity, he is chargeable with notice of the extent of their authority and whether they were properly executing the powers given them in the application and deed of trust. Fidelity Trust Co. v. Fowler, 217 S. W. 953, and authorities cited; Bettainer v. Smith, 5 L. R. A. (N. S.) 628; Webb v. Moseley, 30 Tex. Civ. App. 311, 70 S. W. 349.

[7] While it is true that the deed of trust recites that Scott & Blackmer had paid off these notes, the facts are sufficient to require the court to submit the issues of good faith and notice to the jury. Pope v. Beauchamp, 219 S. W. 447. The effect of the jury's findings is that appellant had notice, and that he did not acquire the note and lien in good faith. "Where the same person acts with their consent as agent of two or more principals, all interested in the same subject-matter, and concerning which he owes a duty of communication to each, notice to this agent must doubtless be deemed notice to all his principals, in accordance with the ordinary rules." 2 Mechem on Agency (2d Ed.) § 1837.

We find it unnecessary to discuss any other question, and the judgment is affirmed.