JOHN K. DONNAN v. JAY E. ADAMS.

Decided December 10, 1902.

1.—Principal and Agent—Power to Sell Land.

Where the owner of land gave to an agent a written memorandum description thereof, with statement of the price, accompanied with verbal instructions to sell the land, this was not sufficient to empower the agent to bind the owner by a written contract of sale.

2.—Same—Revocation of Power.

A sale of the land by the owner himself constitutes a revocation of the special power to sell so given the agent.

3.—Same—Recording as Notice of Revocation.

Under the statute providing that the record of a deed shall be notice to all persons of its existence, the registry of a deed executed by the owner of land is notice to a special agent and all persons dealing with him of the revocation of the agent's authority to sell the land.

Appeal from the District Court of Bexar County. Tried below before Hon. S. J. Brooks.

*Lewis Maverick* and *R. B. Minor,* for appellant.

*J. A. Buckler,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellant to recover of appellee damages in the sum of $4800, alleged to have accrued by reason of the sale by appellee of certain land which he had authorized an agent to sell, and which the latter had sold to appellant, the land in the meantime having been sold by appellee to a third person. The trial was by the court and resulted in a judgment for appellee. We adopt the findings of fact of the district judge:

"1. About February 20, 1901, the defendant, J. E. Adams, informed D. H. Walsh that he had a tract of land, 320 acres, in E. W. Wallace survey in Hardin County, that he desired to sell, and gave him a pencil memorandum of which the following is a copy: 'Undivided half of E. W. Wallace survey of 640 acres west of Olive, $3. Other half owned by Olive Sternberg & Co., of Olive. (Signed) J. E. Adams.'

"At the same time he requested Walsh to sell the land at $3 per acre, and stated that he hoped he (Walsh) could make a sale of it, as he had done considerable business for him (Adams), for which he had received no pay, and he would like for Walsh to make the commission.

"2. Walsh at this time was the agent for Adams in renting and looking after a house in Austin, but was handling no other lands for him, though some years before this date he had tried to sell another tract belonging to Adams.

"3. On April 12, 1901, Walsh wrote to Adams and asked if the price of the Hardin County land was still $3 an acre, and on April 13, 1901, Adams wrote to Walsh on other business, but added a postscript to the card as follows: '320 Hardin Co. land now $5 per acre.'

·    30 Texas Civil Appeals Reports.

"4. On April 19, 1901, the defendant Adams sold the tract of land in question to Jefferson Donovan for $1920, and the deed therefor was duly filed for record in Hardin County on the 22d day of April, 1901.

"5. On April 24, 1901, D. H. Walsh sold the land to plaintiff, John K. Donnan, and entered into the written contract, a copy of which is attached to plaintiff's petition, and at the same time the said Donnan gave said Walsh $100 as forfeit money under said contract, which was returned to him after Adams refused to carry out the contract.

"6. The plaintiff, John K. Donnan, was willing and able to carry out said contract, and continually insisted on compliance therewith by Adams.

"7. Walsh notified Adams, on the date of the contract, of the sale he had made with Donnan, and Adams immediately advised Walsh and Donnan that he had sold the land and that Walsh had no power to make the contract, and declined to carry out the same; and thereafter Donnan brought this suit.

"8. The market value of land at any time between the 24th day of April, and the 15th day of June, 1901, was $10 per acre.

"9. The market value at the date of this trial was not over $5 per acre.

"10. There was no actual notice to either Walsh or Donnan of any termination of Walsh's authority to sell, nor that Adams had sold the land himself."

The proposition of law propounded by appellant under the first assignment of error is that the authority given by appellee to Walsh to sell the land carried with it the power and authority to consummate the sale by a written memorandum or contract of sale. The proposition presents a subject which has been the prolific source of many decisions in the different courts of the Union. In Texas the question has never been fully considered by the Supreme Court, and no satisfactory decision has therefore been rendered by that court. We will briefly review the Texas cases cited by appellant.

In the case of Fisher v. Bowser, 41 Texas, 222, suit was instituted to compel specific performance upon the part of the owner of land, the claim being based upon a contract of sale signed by an agent. The opinion is very meager and unsatisfactory, and it does not appear what the terms of the instrument creating the agency contained.

In the cases of Rogers v. Bass, 46 Texas, 505, Harrell v. Zimpleman, 66 Texas, 292, and De Cordova v. Bohn, 74 Texas, 643, the question does not arise. In Wynne v. Parke, 89 Texas, 413, the agent had a written power of attorney which authorized him to dispose of real estate, and gave him full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as one might or could do if personally present. The court held that it gave authority to the agent to execute a deed to the land, and we think the language comprehensive enough to fully sustain the decision. In Texas Loan Agency

v. Miller, 94 Texas, 464, the power of attorney gave the authority as follows: "For me and in my name to buy and sell lands, goods and chattels, to receipt for me and in my name, and to transact all the business necessary in the transaction of my affairs. And I, Jane Beauchamp, do hereby empower the said Charles as my attorney in fact to sign my name as my attorney, and I do further bind and confirm all the acts of said Charles as may be necessary and legal as my attorney in fact, hereby acknowledging every act or acts of said Charles as my attorney in fact as binding on me as if the same were done by me personally, hereby binding my heirs, executors, administrators, or assigns to regard the act or acts of said Charles as my attorney in fact as binding as if executed by me, Jane Beauchamp, in my proper person." No one questioned the authority conferred on the agent to sell, the only contention being that the agent could only sell lands which he had bought, or in other words, that land owned by the maker of the instrument when it was executed was not affected by the power conferred on the agent.

This court did not discuss the question at issue in the case of Tynan v. Dullnig, 25 Southwestern Reporter, 465, the only matter considered being that of subagency.

From our investigation of the subject we arrive at the conclusion that the extent of the authority conferred by a memorandum in writing merely empowering an agent to sell, must be determined by the circumstances under which the power is given, the person to whom it is given, and all facts surrounding the parties at the time of the execution of the writing. If the language of the writing or the circumstances surrounding the parties indicate that it was intended to confer the power on the agent to enter into contracts of sale and bind his principal by written contract, then the naked power to find a purchaser will confer no such authority on the agent. This position is well settled by decisions of a number of States. In the case of Carstens v. McReavy (Wash.), 25 Pacific Reporter, 471, the agent had been authorized, by writing, to sell certain real etsate. The agent sold the property and executed a contract for its sale, which was repudiated by the owner, his contention being that the agent had no authority to execute the contract. The court said: "The statute of frauds may be satisfied by the execution of a contract for the sale of lands by the hand of another person than the party to be charged, if that person be thereunto lawfully authorized, and it is well settled that such third person may be thus lawfully authorized, orally, by written direction not under seal, and even by a course of conduct amounting to an estoppel. It therefore only remains to determine whether the ordinary real estate agent or broker, authorized to sell land, is thereby empowered to enter into a contract binding upon his principal, in an action for specific performance. A real estate agent is a person who is, generally speaking, engaged in the business of procuring purchases or sales of lands for third persons, upon a commission contingent upon success. He owes no

affirmative duty to his client, is not liable to him for negligence or failure, and may recede from his employment at will, without notice. On the other hand, courts almost unanimously unite in holding that in case of an ordinary employment to sell, when he has procured a party able and willing to buy upon the terms demanded by his principal, and has notified him of the purchaser's readiness to buy, the agent's work is ended, and he is entitled to his commission. It is not his duty to procure a contract, or to make one, and he is not in default if he fails to do either. Therefore, to our minds, it seems clear that, ordinarily, it is not within the contemplation of the owner and agent, where property of this character is placed in the hands of the latter for sale, that he shall, without consultation with his client, execute a contract. We are aware that courts have held to this extent, basing their decisions upon a distinction between an authority to sell and an authority to find a purchaser, and upon the well known rule that an authority to an agent to do a thing is presumed to include all the necessary and usual means of executing it with effect. But such holdings do not commend themselves to our judgment, and as this is a new question in this State, and we are satisfied that it is not the general practice of agents to make such contracts, we do not hesitate to dissent from the decisions above mentioned, especially as there is no lack of authority for the position we take."

In the case of McCulloch v. Hitchcock, 42 Atlantic Reporter, 81, an agent had been authorized to sell land, and the agent executed in the name of the writer of the letter a contract of sale. Passing on the authority to execute such contract the Supreme Court of Connecticut said: "Anderson and Mead had no authority to make a written contract binding on the defendant to convey the land in question, unless it can be found in the letter of November 23, 1896. That letter does not, in terms, purport to give any such authority. The contention of the plaintiff is that such authority is implied from the request in the letter to find a purchaser; that it is a custom of the real estate business that a broker authorized to find a purchaser for lands may sign a binding contract for the sale of that land. We do not understand any such custom to exist in this State. A custom can exist only as a matter of fact. Smith v. Phipps, 65 Conn., 307, 32 Atl. Rep., 367. There is no finding that any such custom prevails in Connecticut, and there is no case cited which recognizes any such rule. A real estate broker or agent is one who negotiates the sales of real property. His business, generally speaking, is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind the principal by signing a contract of sale. A sale of real estate involves the adjustment of many matters besides the fixing of the price. The delivery of the possession has to be settled; generally the title has to be examined; and the conveyance, with its covenants, is to be agreed upon and executed by the owner. All of these things require conferences, and time for completion. These are for the determination of the owner, and do

not pertain to the duties, and are not within the authority, of a real estate agent. For these obvious reasons, and others which might be suggested, it is a wise provision of the law which withholds from such an agent, as we think it does, any implied authority to sign a contract of sale in behalf of his principal. Coleman v. Garrigues, 18 Barb., 60; Roach v. Coe, 1 E. D. Smith, 175; Lindley v. Keim, 54 N. J. Eq., 418-423, 34 Atl. Rep., 1073; Duffy v. Hobson, 40 Cal., 240; 4 Am. and Eng. Enc. of Law, 2 ed., 964, note; 3 Waite, Act. and Def., 286, 287; Halsey v. Monteiro, 92 Va., 581, 24 S. E. Rep., 258; Armstrong v. Lowe, 76 Cal., 616, 18 Pac. Rep., 758."

In the case of O'Reilly v. Keim, 34 Atlantic Reporter, 1073, the question under consideration was ably discussed by the Court of Errors and Appeals of New Jersey, which is the court of last resort in that State. The following rule formulated by the chancery court in the same case, 30 Atlantic Reporter, 1063, was adopted: "The mere employment of an ordinary real estate broker to effect a sale of a parcel of land, even though the price and terms be prescribed, does not amount to giving present authority to such broker to conclude a binding contract for the same. Moreover, such authority is not usually to be inferred from the use by the principal and broker in that connection of the terms 'for sale' or 'to sell' and the like." The court proceeds: "It follows that he who seeks to establish the authority of an agent to bind his principal to the sale and conveyance of lands by proof of circumstances from which it may be inferred that such authority was granted, will not be successful if the circumstances proved merely justify the inference that the principal had placed his lands in the hands of the agent as an ordinary real estate broker. To establish the grant of the greater authority, the circumstances must show more than the grant of the restricted authority." The evidence was voluminous in that case, but the court held that it was insufficient to show a greater authority than that of procuring a purchaser for the land.

We think the correct doctrine has been promulgated in the New Jersey case, and that the mere fact of a land agent or broker having authority in writing to sell real estate is not sufficient to enlarge the authority granted by the strict terms of the writing so as to confer the power of contracting in writing in the name of the principal for the sale of the land. In other words, the burden was on appellant to establish that the power to sell granted to Walsh carried with it the authority to bind his principal by a contract of sale in writing.

It will not be practicable to review at length the cases cited by appellant, but those that are accessible do not fully sustain the position taken.

In the case of Valentine v. Piper, 39 Massachusetts, 85, the agent was not only authorized by the principal, who lived in England, to sell the land at private sale or by auction, but to collect and dispose of the proceeds. It was held by the court that the tenor of the instrument was such as to confer the power of sale, but said further: "Should it ap-

pear, either from the restricted words used, or from the tenor of the whole instrument, that such was the intent, it ought to be construed as conferring such a restricted power only."

In the case of Lyon v. Pollock, 99 United States, 668, the letter conveying the authority to sell was written while the principal was absent from Texas, and afraid to come back to it, and the language was, "I wish you to manage my property as you would your own. If a good opportunity offers to sell everything I have, I would be glad to sell." It was held that the fact that the principal was a fugitive and at a place where communication with the agent was infrequent and uncertain, and the fact that the letter had been construed by the principal to give the power to sell and that he acquiesced in its sale, sufficiently established the intention to give the authority to make the deed.

In all of the cases cited by appellant that have come under our notice, it is held that when a mere power to sell is given the intent of the parties is ascertainable by consideration of the facts surrounding each case, and in none except New York and Illinois has it been broadly held that the power to sell carries with it the power to make a deed, and the doctrine seems to have been so obnoxious in those States that the Legislatures upset it by direct legislation.

In the case of Fischer v. Bowser, above cited, the Supreme Court of Texas said: "In such cases also there may often be a question of fact arising out of the terms of the authority given, or from the nature of the business followed by the agent, as to the extent of the authority given to the agent, and as to how it is to be executed or performed. For if a person be appointed only to make a negotiation for a contract of sale, or to seek a purchaser, as is sometimes the case with land brokers, that would not embrace authority to such agent to execute a written contract of sale for his principal."

The clear deduction from the authorities cited, as well as others, is that when the authority to bind the principal by writing as to land is not given in terms in the instrument giving the power of sale, or is not to be clearly deduced therefrom, the matter becomes a question of fact to be determined by the custom prevailing in dealing with such agents, by the course of dealing between the parties, and any other circumstance throwing light on the transaction.

The case of Hunter v. Eastham, 67 Southwestern Reporter, 1080, decided by the Court of Civil Appeals of the First District, goes farther perhaps in sustaining the right of an agent, under a mere power to sell, to bind the principal in writing, than any Texas case. The instrument in that case was as follows: "Know all men by these presents that we, Beverly and Caroline Hunter, do hereby empower Robert Hunter to sell all our land which is situated in the county of Walker and State of Texas, known as the Silas Morgan place, and containing 200 acres more or less." It was held that it was clear from the provisions of the instrument that it was the intent of the makers of the instrument to confer the power on the agent of executing a deed for the

principals. The Texas cases cited are Cooper v. Horner, 62 Texas, 356, and Wynne v. Parke herein reviewed. Neither of the cases sustain the decision. The facts of the case, however, justified the result reached by the court.

We now reach an application of the facts of this case to the principles hereinbefore stated. Appellant, in order to show authority in the agent, introduced the written authorization copied in the findings of fact, and nothing more, and as the burden was on him to establish the authority, it would seem from the authorities cited that he had failed in his case, and that the court was justified in finding that the agent did not have authority to bind his principal in making the contract of sale. The court in addition held that under the facts appellant had constructive notice of the revocation of the agency by the principal, and if the latter ruling be correct, an affirmance must follow, no matter if the holding as to the want of authority of the agent was incorrect.

Five days before the contract of sale was made between appellant and Walsh, appellee had sold the land to another party, and two days before the date of such contract the deed of conveyance executed by appellee had been recorded in the county in which the land is situated. The trial court held that the agency given Walsh was a special one, and that the sale by the principal was a revocation of it regardless of notice to the agent or appellant.

It is the rule that notice must be given to an agent of the revocation of his authority, whether the same be general or special. Mechem, Agency, sec. 226. This question can be of no importance in this case, however, for the reason that the agent is not complaining of any lack of notice, and that is a matter personal to him.

That there was a revocation of the agency, whether it was general or special, is implied from the disposition of the subject matter on which the agency was to operate by a sale of the land by the principal, and while as between the principal and agent the latter might be entitled to notice, it is stated by Mechem, section 225, that it is the general rule that no notice is required to be given to third persons of the revocation of the authority of a special agent. Under the definitions given of general and special agents there can be no doubt that Walsh was a special agent. He was authorized to perform a single act, the sale of a particular tract of land for a specific price, and had no attributes or powers conferred upon him except those which were inseparably connected with the offices to be performed by him. Mechem, Agency, sec. 283.

But leaving the question of the distinction between a general and special agent, and admitting that notice of the revocation of the agency should have been given to appellant in order to prevent a recovery, we then take up the consideration of the question of notice.

It is provided in article 4652, Revised Statutes: "The record of any grant, deed, or instrument of writing authorized or required to be recorded, which shall have been duly proven up or acknowledged for record and duly recorded in the proper county, shall be taken and held

as notice to all persons of the existence of such grant, deed, or instrument. It is clear, therefore, that at the time that Walsh and appellant entered into the contract on which this suit is based, each of them had statutory notice that appellee had sold the land. Each of them was notified that the subject matter of the agency had been destroyed, and it would seem to follow that they were notified that the agency did not and could not longer exist. The law has not prescribed what is sufficient notice of the revocation of an agency, but certainly when a third person is informed that the land which he desires to buy from an agent has been sold by the principal, this should be sufficient notice to him of the inability of the agent to contract.

In the case of Henderson v. Ford, 46 Texas, 627, it was held that the marriage of the principal was sufficient notice to third persons who bought from his agent that his marriage had revoked the power of the agent to sell land which became a homestead by the marriage. In that case the wife had not lived upon the land at the time that the person bought from the agent.

In the case of Ahern v. Baker, 24 Northwestern Reporter, 341, it was held by the Supreme Court of Minnesota in a case where a party bought land from an agent, already sold by the principal or another agent, that in dealing with the agent the purchaser took the risk of the revocation of the agency.

The judgment of the District Court is affirmed.

*Affirmed.*