**FAIN et al. v. BARR. (No. 1959.)**

(Court of Civil Appeals of Texas. Amarillo. May 3, 1922.)

1. **Brokers ⬤=94—Broker merely employed to sell not authorized to make binding contract to assign oil lease.**

Where the owner merely employs a broker to sell an oil lease, the broker could not make a written contract binding him to assign the lease.

2. **Brokers ⬤=103—Ratification of contract executed by broker not inferred from approval of copies varying materially from contract executed by broker.**

Ratification of a contract to sell an oil lease cannot be inferred, where owner approved copies of contract delivered him by broker which varied in material particulars from the contract executed by the broker and delivered to purchasers, and of which latter contract his principal had no knowledge.

3. **Brokers ⬤=94—Authority to sell in customary manner does not authorize sale on credit.**

A broker authorized to sell in the usual and customary manner is not authorized to sell on credit.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by B. L. Fain and others against E. W. Barr. From a judgment for defendant, plaintiffs appeal. Affirmed.

Jno. P. Marrs, of Wichita Falls, for appellants.

Weeks, Morrow & Francis, of Wichita Falls, for appellee.

HALL, J. The appellants, B. L. Fain, R. H. Frizzell, G. W. Peckham, Jim Robinson, and John F. Robinson, sued the appellee, in the district court of Wichita county, to recover damages in the sum of $12,000, resulting from breach of a contract, alleging in effect that Barr promised to deliver to plaintiffs an assignment of an oil and gas lease, upon a certain 200 acres of land in Wichita county. The plaintiffs' allegations are, in substance, that defendant Barr owned or claimed to own or control an option on the mineral rights in the lands described in the petition and that, on or about the 5th day of May, 1919, he authorized his agent, Charles Bollman, to assign said lease for a consideration of $40 per acre, and further authorized said agent to enter into a written contract for the sale of said property with plaintiffs. They allege the sale, the execution of the contract, and attach a copy of the contract to the petition. They further allege that, on or about the 17th day of May, 1919, the defendant, with full knowledge of the execution and delivery of said contract by his agent, Bollman, and with full knowledge of its terms and provisions, confirmed and ratified the same; that, relying upon the defendant to carry out and perform his part of said assignment, the plaintiffs offered such oil and gas lease for sale to various prospective purchasers, many of whom were ready, able, and willing to buy the lease from plaintiffs at $100 per acre; that defendant was apprised of these facts and, on or about the 10th day of June, 1919, breached his contract with them and sold the lease to other parties for a better price, and refused to perform the contract made with plaintiffs.

Defendant answered by general demurrer, general denial, and specially alleged under oath that Bollman was not, at the time of

the execution of the contract, or at any other time, the agent of Barr, to assign the lease, or to execute the contract attached to the petition, further denying that the defendant, Barr, ever confirmed or ratified the contract declared upon by plaintiff. At the conclusion of the evidence, the court directed the jury to return a verdict in favor of the defendant. Judgment was entered accordingly.

The contract of sale entered into between Bollman and the appellants, stipulated, in substance, that Barr has sold the lease described therein to Frizzell and Fain for $40 per acre, $4,000 of which was being put up in the bank in escrow to await the examination and approval of title by plaintiffs' attorneys, after which plaintiffs were to pay defendant $4,000 more. It stipulated that the defendant should have fifteen days in which to furnish the abstract, and plaintiffs were to have three days in which to examine the abstract, and defendant should have a reasonable time thereafter to cure any objections that plaintiffs' attorneys might find in the title; that, if defendant complied with his part of the contract and plaintiffs failed to do so, then the $4,000 in escrow should be forfeited to defendant as liquidated damages. It appears that, upon the trial, after the plaintiffs had introduced in evidence the copy of the contract, which was attached to their petition, and had closed the introduction of evidence in chief, the defendant introduced two exhibits, numbered two and three, which were attached to his answer, and were identical with the copy of the contract attached to plaintiffs' petition, except that plaintiffs' contract was signed "E. W. Barr by Charles Bollman, Agent," while Exhibits 2 and 3 were signed "Amos, by Charles Bollman, Agent," and with the further exception that Exhibit No. 1, attached to plaintiffs' petition, provided that the $4,000 should be paid three days after the approval of title, whereas Exhibits 2 and 3 provided that it should be paid five days after approval.

The material questions presented by the assignments and the record are: (1) Was Bollman authorized to enter into a written contract, binding the defendant to sell, upon the terms set out in the contract, which he did execute? (2) Did the defendant, Barr, ever ratify the act of Bollman in making the sale upon such terms? Upon the first issue Bollman testified:

"Mr. Barr said to me, 'Mr. Bollman, you can sell this lease for me,' or words to that effect. I cannot just remember what was said there. He just gave the price of $30 an acre; it was to net him $30 an acre. I cannot think anything else that was said in that conversation right now—nothing else important. He listed this acreage with me for sale at $30 an acre. I was to have all that I could make over $30 an acre. I was selling as a broker in the usual and customary manner. At the time he listed the land he did not tell me to sign up any written contract with any one. I do not know that he told me anything about signing a written contract. I had no talk with Mr. Barr again from the time of this conversation until the time I signed up the contract with Mr. Robinson and Mr. Fain. I do not suppose that Mr. Barr ever told me that I could sell this lease on credit. He didn't say he would sell it on credit. We were to get our money out of it. He didn't tell me that I could sell the land part cash and part credit."

[1] In our opinion Bollman was not authorized to enter into a written contract binding Barr to convey the property. Donnan v. Adams, 30 Tex. Civ. App. 615, 71 S. W. 580; J. B. Watkins L. M. Co. v. Campbell, 100 Tex. 542, 101 S. W. 1078; Weatherhead v. Ettinger, 78 Ohio St. 104, 84 N. E. 598, 17 L. R. A. (N. S.) 210, note. According to the uncontradicted evidence, Barr never saw the copy of the contract upon which suit was filed. This copy, as stated above, is signed "E. W. Barr, by Charles Bollman, Agent." The two copies which were delivered to him by Bollman were signed, "Amos, by Charles Bollman, Agent."

[2, 3] While, according to the testimony of Bollman, Barr indicated his willingness to complete the sale in accordance with the contract, this is not a ratification of the contract sued upon, nor of the act of Bollman in signing Barr's name to it. It was not shown that Barr actually owned the lease in question, and we are not willing to hold that he intended to bind Amos to assign the lease, even if it were shown that he had the authority to do so. It is difficult to understand how his approval of the terms of a contract, signed by an agent, for a third party, could be held to be a ratification of a different contract to which the agent had signed his name and of which he had no knowledge. It appears from the record that the copy of the contract attached to appellant's petition varied in another material particular from the two copies which Bollman delivered to Barr. Aside from the question presented by the difference in signature, this fact would defeat the appellant's claim of ratification. In our opinion, the contract does not provide for a sale on credit. There being no issue of fact to present to the jury, the trial court did not err in directing a verdict for the defendants.

The judgment is affirmed.