## DALLAS JOINT STOCK LAND BANK v. COLBERT.

### No. 1887.

Court of Civil Appeals of Texas. Eastland.

March 31, 1939.

Rehearing Denied April 28, 1939.

McCombs & Andress, of Dallas, for appellant on the merits.

Lawther, Cramer, Perry & Johnson, of Dallas, for appellant on rehearing.

Scarborough & Ely, of Abilene, for appellee.

FUNDERBURK, Justice.

T. R. Colbert brought this suit against the Dallas Joint Stock Land Bank to recover compensation for services alleged to have been rendered by plaintiff for the defendant in procuring a purchaser for a large tract of land situated in Jones and Haskell Counties, known as the Colbert ranch.

Plaintiff alleged that defendant "acting by and through G. D. Gay, its vice-president, employed the plaintiff herein to act as an agent *to sell said land,* and agreed to pay plaintiff five per cent for his services *in securing a purchaser* for said land." In the alternative it was alleged that if defendant did not agree to pay plaintiff a stipulated commission of five per cent for *the sale* of said property that nevertheless defendant did employ plaintiff to sell said property and did employ plaintiff to *procure a purchaser* therefor, and the defendant did agree to pay plaintiff a commission for the sale of said property and that the usual, reasonable and customary commission for the services of real estate agents in *procuring a sale* of land in vicinity of the above described land is and was five per cent on the amount for which said land was sold. It was then further alleged, applicable alike to all the preceding, that "the plaintiff acting upon said agreement and employment, procured a purchaser for *the sale* of said property, to-wit, G. C. Carothers and Hardy Grissom, who did buy said land at a stipulated price of $56,819.00 and that the commission due this plaintiff by virtue of his services in *procuring a purchaser* for the sale of said land is $28,409.50 [2,840.95?] together with six per cent interest from and after July 1, 1933." (Italics ours)

Paragraph IV of plaintiff's petition is as follows: "Plaintiff further says that the said Carothers was joined in the purchase of said land by Hardy Grissom. Plaintiff represents that he was the pro-

curing cause of the sale of said property. That before the sale was made, the defendant, acting through its president, one Ferguson, consulted and advised with the plaintiff herein as to the sale of said land, and that the agreement for plaintiff's employment was known by the defendant and its president, and that the defendant, with full knowledge of the agreement and employment of the plaintiff herein by said G. D. Gay, acting for the defendant, accepted the fruits of the plaintiff's efforts and that the defendant, with full knowledge of the facts, accepted the purchaser procured by plaintiff knowing that said purchaser had been procured by said plaintiff, knowing that plaintiff was in the real estate business, and knowing that plaintiff was claiming a commission, and with such knowledge sold the land to Carothers and Grissom, and by reason thereof became liable to pay this plaintiff a reasonable commission for his services rendered, and this plaintiff alleges that the reasonable amount of the services rendered was five per cent of the entire sale." Upon the contingency that the court should determine "that he is not entitled to a commission on the part sold Grissom" plaintiff alleged: "that he is entitled to recover commission on the part sold to Carothers, and that the plaintiff is entitled, and the defendant is bound to pay plaintiff, five per cent on the one half interest sold to Carothers, which commission amounted to $1,420.25, same being five per cent of the consideration received by the defendant from said Carothers, and plaintiff alleges that he is entitled to six per cent interest on said amount from and after the first of July, 1933, until the date of payment. Plaintiff further alleges that the reasonable value of plaintiff's services, which services were accepted by the defendant, and the reasonable commission for the sale made was at least five per cent on the amount paid the defendant and agreed to be paid the defendant by Carothers, which is the sum of $28,409.50 [$2,840.95?] and that by reason of all the facts and circumstances herein alleged, the defendant is obligated to pay to this plaintiff the said sum of $1,420.25, together with six per cent interest thereon from and after the first day of July, 1933."

The prayer was for judgment "for commission, damages, costs of suit, and for all other and further relief to which he may be entitled at law and in equity."

Upon the trial, the issues were submitted to a jury. By the verdict it was found (1) That before the sale "G. D. Gay employed T. R. Colbert to sell the Colbert Ranch." (2) That "G. D. Gay told T. R. Colbert that he (Colbert) would be paid a commission to sell the ranch." (3) That "G. D. Gay had authority from defendant to employ plaintiff to procure a purchaser for the Colbert Ranch." (4) That "T. R. Colbert was the procuring cause of the sale of an undivided one half interest in the Colbert Ranch by the Dallas Joint Stock Land Bank to G. C. Carothers." (5) That "the president of the defendant bank, as such, knew of the efforts of plaintiff to procure a purchaser for said Colbert Ranch, prior to selling such property." (6) That "defendant bank, through its president, accepted the services of plaintiff in the sale of said ranch." (7) That "the usual and customary agent's commission for the sale of land in the neighborhood of Stamford, Texas, during the spring and summer of 1933 was 5%."

From the judgment rendered upon said verdict, the defendant has appealed.

On a former appeal of the case, this court reversed the judgment of the trial court and rendered judgment for defendant. Dallas Joint Stock Land Bank v. Colbert, Tex.Civ.App., 98 S.W.2d 239. That judgment, as well as the judgment of the court below, was reversed by the Supreme Court and the cause remanded to the district court for a new trial. Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031.

It is important, in view of contentions made and questions arising upon this appeal, to understand the conclusions of this court and of the Supreme Court on the former appeal, and particularly the points of agreement and disagreement between them.

This court held that Gay, as assistant vice-president, was without implied authority to bind the defendant by a contract to pay commissions and that there was no evidence of his actual authority. That if, however, there was evidence of such actual authority sufficient to raise an issue, such issue not being submitted, was, by the failure of plaintiff to request its submission, waived. That there was no evidence of ratification of the contract or estoppel to deny liability upon the same—the evidence, if any, that plaintiff procured a purchaser for only a one half interest in

the land not being any evidence of ratification. That even if issues of ratification or estoppel were raised by the evidence, they, not being submitted, were, by reason of the failure of the plaintiff to request their submission, waived. That evidence that plaintiff was the procuring cause of the sale of a one half interest in the land was not evidence of the performance of the contract alleged, which was to procure a purchaser for the entire interest. That no consideration should be given the question of the right of plaintiff to recover upon quantum meruit because plaintiff's petition alleged no such cause of action. That under said conclusions, the judgment should be reversed and judgment rendered for the defendant.

The Supreme Court, contrary to the views of this court, concluded that plaintiff's petition was sufficient to state a cause of action upon quantum meruit. That the evidence raised an issue of the acceptance by defendant of the services of plaintiff in procuring a purchaser of a one half interest in the land, which, not having been submitted or conclusively established by the evidence, nor impliedly found so as to support the judgment, was required to be determined by the jury, for which reason, with others, a remand of the case was ordered. The Supreme Court agreed with our conclusion that no right of recovery upon the alleged express contract was shown, since the services of plaintiff in procuring a purchaser of only a half interest in the land was not the performance required by the terms of the contract.

Based upon such history of the case upon the former appeal, the defendant contended in the trial court, and renews the contention here, in effect, that the cause of action on the alleged express contract was eliminated and that the allegation of same anew in plaintiff's Third Amended Original Petition, filed subsequently to the remand of the case, was subject to exception and should have been stricken out. The argument is advanced to the effect that application of the doctrine of "the law of the case" has such effect.

■ It may be that consistently with its opinion, the Supreme Court could have affirmed the judgment of this court insofar as it denied plaintiff any recovery on the express contract alleged, and have remanded the case as affecting only the cause of action for quantum meruit.

However, that was not the nature of the court's action. All prior judgments were set aside and the case, therefore, stood on the docket of the trial court, the same as if it had never been tried. True, in the subsequent trial that court, and upon appeal this court, are bound by the Supreme Court's interpretation of the law; but there was no limitation imposed upon the right of plaintiff to plead and prove a cause of action upon express contract, as well as upon quantum meruit, if he could do so, conformably, of course, to the law as declared in said opinion.

■ We readily conclude, however, that plaintiff as a matter of law failed to prove his alleged cause of action upon the express contract, for at least one of the same reasons as before. The Supreme Court said [129 Tex. 235, 102 S.W.2d 1034]: "The Court of Civil Appeals correctly held that the plaintiff, suing on an entire contract, cannot recover on the contract when he has only partially performed, unless complete performance has been prevented by the other party to the contract. * * * There is no pleading, and no effort was made to prove, that Colbert was wrongfully prevented by the bank from procuring a purchaser for the entire interest in the property." The same thing can be said of the case as now presented, just as truly as upon the previous appeal. If it be granted that plaintiff had an express contract with defendant, employing him to procure a purchaser for the land, and that he did procure Carothers to purchase one half interest, he, nevertheless, cannot recover on the contract because that did not constitute performance of the contract according to terms. Blain & Kelly v. Pacific Express Co., 69 Tex. 74, 6 S.W. 679.

We shall, therefore, pass to a consideration of the questions affecting the correctness of the judgment for plaintiff, based only upon the cause of action for quantum meruit.

With reference to the correctness of the court's action as a basis of the judgment, the question which we now consider is whether there was sufficient evidence to raise an issue of fact upon each essential element of liability upon quantum meruit.

■ Liability upon quantum meruit is liability upon an "implied contract" *in a special sense*. The obligation is not truly contractual. To distinguish it from lia-

bility upon "implied contract" in the true sense, Mr. Williston prefers the term "quasi-contract." He says: "This name is better since it makes clear that the obligations in question are not true contracts and because it avoids confusion with another class of obligations which have also been called implied contracts." Williston on Contracts, vol. 1, sec. 3.

Plaintiff's pleadings in this case alleged the liability of the defendant to pay compensation upon three theories: (1) Upon an express contract; (2) in the alternative, upon an express contract, except as to one provision relating to the rate of compensation which was implied (in fact); and (3) upon a quasi-contract, or contract implied in law; or, in other words, upon quantum meruit. The distinction between contracts implied *in fact* and contracts implied *in law* is well set forth in the Re-Statement of the Law of Contracts, vol. 1, sec. 5, from which we quote as follows: "Contracts are often spoken of as express or implied. The distinction involves, however, no difference in legal effect, but lies merely in the mode of manifesting assent. *Implied contracts* must be distinguished from quasi-contracts, which also have often been called *implied contracts* or contracts implied *in law*. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice."

The principle of liability upon quantum meruit thus identified with liability upon quasi-contract, or contract implied *in law,* as distinct from liability upon implied contract proper, or contract implied in fact, has in this State been applied in a great number of cases, fair representatives of which, may be cited as follows: Sluder v. City of San Antonio, Tex.Com. App., 2 S.W.2d 841; City of San Antonio v. French, 80 Tex. 575, 16 S.W. 440, 26 Am.St.Rep. 763; City of Sherman v. Connor, 88 Tex. 35, 29 S.W. 1053; Cotton v. Rand, 93 Tex. 7, 51 S.W. 838; Markham Irr. Co. v. Brown, Tex.Com.App., 292 S. W. 863; Rogers-Hill & Co. v. San Antonio Hotel Co., Tex.Com.App., 23 S.W.2d 329; Carroll v. Welch, 26 Tex. 147; Henrietta Nat. Bank v. Barrett, Tex.Civ.App., 25 S.W. 456; Colbert v. Dallas Joint Stock Land Bank, supra. The same principle has been variously denominated "quantum meruit", "unjust enrichment" (Eyer & Co. v. Mercer County, D.C., 292 F. 292); "estoppel" (Payne v. First National Bank, Tex.Com.App., 291 S.W. 209), but more often perhaps "implied contract." City of Dublin v. Thornton, Tex.Civ.App., 60 S.W.2d 302. See, also, the above cited cases.

In one of the cited cases, the obligation was described as one which the "law raises by implication in order to prevent the ends of justice being defeated." Sluder v. City of San Antonio, supra [2 S.W.2d 845]. In the same connection, as applicable to the facts there involved, it was further said: "It would be manifestly unjust and inequitable to permit the officers of a city, who have knowledge that a party is performing services under a contract, to sit silently and permit the same to be fully completed, and, when the city has received the benefit of full performance thereof, to interpose the defense that it should not be required to pay for such benefits because the contract was not made in the particular form required by the charter." As indicated, by this and the other decisions, the principle of liability upon quantum meruit may be applicable to partial performance under a valid contract, or to complete or partial performance, under a void contract. An essential prerequisite to any such liability is the acceptance of benefits by the one sought to be charged, rendered under such circumstances as reasonably to notify him that the one performing such services was expecting to be paid compensation therefor.

Peculiarly difficult questions arise in distinguishing between liability upon quantum meruit for services rendered, not under color of any contract of employment, valid or void, to which the one sought to be charged was a party, and the non-liability to pay for services, though beneficial, and rendered within the knowledge of the one benefited, by a mere volunteer. The nature of the services as in themselves affording notice not only of their beneficial character, but of the reasonable expectation of compensation therefor, may be important. In the leading case of Britton v. Turner, 6 N.H. 481, 26 Am.Dec. 713, referred to in the opinion of the Supreme Court on the former appeal as being followed by the courts of Texas, there was involved a valid contract for work for a specified time for an entire sum. The question was whether the promisee, hav-

ing abandoned the work, after part performance, and being, therefore, not entitled to recover upon the contract, could recover the reasonable value of the beneficial services performed and accepted. The question of whether the services were accepted was determined upon the view that they were of a nature which the parties to the contract must have contemplated would be accepted from time to time as performed. Said the court upon this point:

"It is said, that in those cases where the plaintiff has been permitted to recover there was an acceptance of what had been done. The answer is, that where the contract is to labor from day to day, for a certain period, the party for whom the labor is done in truth stipulates to receive it from day to day, as it is performed, and although the other may not eventually do all he has contracted to do, there has been, necessarily, an acceptance of what has been done in pursuance of the contract, and the party must have understood when he made the contract that there was to be such acceptance.

"If then the party stipulates in the outset to receive part performance from time to time, with a knowledge that the whole may not be completed, we see no reason why he should not equally be holden to pay for the amount of value received, as where he afterwards takes the benefit of what has been done, with a knowledge that the whole which has been contracted for has not been performed."

In the opinion the court made this important declaration: "If on such failure to perform the whole, the nature of the contract be such that the employer can reject what has been done, and refuse to receive any benefit from the part performance, he is entitled so to do, and in such case is not liable to be charged, *unless he has before assented to* and accepted of what has been done, however much the other party, may have done towards the performance." (Italics ours)

In the present case, the only contract involved was one to which only plaintiff and Gay, a third person, were parties. There was no evidence of any previous authority, or subsequent ratification or estoppel, having the effect of making the defendant a party to such contract. According to the contract the promises of compensation were upon condition that plaintiff procure a purchaser for the ranch.

The contract made no provision for compensation for services short of full performance. The contract was of a nature impossible for plaintiff to breach, since it required him to do nothing. "A real estate agent is a person who is, generally speaking, engaged in the business of procuring purchases or sales of land for third persons upon a commission *contingent upon success.*" (Italics ours) Donnan v. Adams, 30 Tex.Civ.App. 615, 71 S.W. 580, 582. Whatever plaintiff may have done by way of effort to procure a purchaser, the contract provided no compensation for services, or, at least, none short of complete performance. It, therefore, unlike the contract in Britton v. Turner, supra, did not stipulate for acceptance of part performance. This poses the question: What constitutes an acceptance of beneficial services under a contract, not fully performed, the rendition of which services are by the provisions of the contract entirely optional, and no compensation provided to be due therefor, except contingently upon a specified result? The question seems to be squarely presented whether defendant not being a party to the contract of employment, by prior authorization or subsequent ratification or estoppel, would by the mere knowledge on its part before the sale was made that plaintiff, acting under the unauthorized contract of a third party, had procured a purchaser for the land, be put to the alternative of becoming legally bound for the payment of compensation to him, or of refusing to sell the land to such purchaser? We are of the opinion that if at the time of sale, the defendant was under no duty, then existing, to plaintiff, its act of making the sale of the land, in part to Carothers, imposed upon it no duty. If under the evidence plaintiff, up to the time of the sale, occupied, as to the defendant, the status of a volunteer, the sale, even had it been to Carothers only, did not change that status. To state the thought differently, where a real estate broker procures a purchaser for land under such circumstances as to show he is a volunteer, the sale of the land to such purchaser does not alone constitute an acceptance of his services so as to impose liability upon the owner under the doctrine of quantum meruit. On the contrary, we think that where the only alternative of an acceptance of a volunteer's services is the surrender of a legal right—as a right of an owner of land to sell it to whom he pleases—the act of sale as a matter of law,

considered alone, should be referred to the legal right, and not to the issue of acceptance of benefits. Directly in point, we think, in support of this proposition is the very convincing opinion of Judge Key in Williams v. Moore, 24 Tex.Civ.App. 402, 58 S.W. 953. On the proposition that the exercise of a preexisting right does not constitute ratification of the unauthorized contract of a third party, see Sheer v. Cummings, 80 Tex. 294, 16 S.W. 37; Nichols v. State, 11 Tex.Civ.App. 327, 32 S.W. 452.

But since it is contended that there was evidence to support the finding that Gay was authorized to make the contract of employment for the defendant, and since, if so, notice to Gay would be notice to the defendant, it is necessary to examine the evidence in the light of the possibility that there may be some evidence of the acceptance of benefits by the defendant other than as shown by the mere fact of the sale of the land (in part) to Carothers.

As said before, it is our conclusion that there was no evidence to raise an issue of the fact of Gay's actual authority to employ plaintiff for defendant. If we are correct in this view, then notice to Gay of the performance of services by plaintiff, or of plaintiff's expectation, if any, of remuneration from the defendant, was not notice to the defendant. Kansas City M. & O. R. Co. v. City of Sweetwater, 104 Tex. 329, 137 S.W. 1117. If there was any evidence that defendant, prior to the sale of the ranch, had knowledge that plaintiff was (1) endeavoring as its agent to procure a purchaser for the land, (2) or expected to be paid compensation by the defendant, (3) or that the defendant accepted the benefits of his services (other than by making the sale which we have held would not alone constitute such acceptance), it is to be found in plaintiff's testimony, concerning a single telephone conversation between him and Ferguson, President of defendant, the material parts of which are as follows:

"Q. Now, Mr. Colbert, after Mr. Gay had been here and after you had had your conversation with him and after you had shown the land to Mr. Carothers, did you at any time have a conversation with Hugh Ferguson, President of the Joint Stock Land Bank of Dallas? A. Yes sir.

"Q. Did you have that conversation with him personally, or by telephone? A. By telephone. * * *

"Q. After you talked with him what did you say to him, if anything, about showing the land to Mr. Carothers? A. I told him I had shown the land to Mr. Carothers and *that Mr. Gay had made me a proposition on the land, to sell it.*

"Q. What did he say, if anything, to you about what Mr. Gay said? A. He said Gay was all wet; that he was not going to sell the land like Mr. Gay put it up; that he wanted a substantial cash payment, and he was going to take advantage of conditions and get what the land was worth. * * *

"Q. Did you say anything to him about having shown this land to anybody? A. I told him I had shown it to Mr. Carothers.

"Q. What did he say about it? A. He said *he wouldn't accept the proposition Gay had made me on the land.*

"Q. What did he say he would accept? A. A substantial payment.

"Q. Of how much money? A. It wasn't mentioned—the amount. * * *

"Q. After that did Mr. Riley come out here? A. Yes.

"Q. This gentleman sitting here? A. Yes.

"Q. Did Mr. Ferguson say anything to you about somebody coming out here? A. No sir.

"Q. He didn't tell you somebody would come? A. No sir." (Italics ours)

In addition to the above concerning the telephone conversation, the plaintiff testified further:

"Q. But later on, Mr. Riley did come? A. Yes sir.

"Q. Then who did Mr. Riley take up the transaction with, if anyone? A. As well as I remember it, he went to my father, and he wanted to see the land, and *I think my father got me to take him out there.*

"Q. Well, did you take him out there? A. I went with him, yes sir, in his car.

"Q. Did you show him the land? A. Yes.

"Q. And after you showed him the land, did he see anyone? A. I do not know. * * *

"Q. Did you ever have a conversation with him about who to see? A. No.

"Q. That is as far as you went with him? A. Well, there was conversation on the trip, about lands. Mr. Riley left the impression with me—* * *

"Q. Instead of leaving an impression, what did he say? A. Well, he said *they would pay a commission if I helped sell the lands.*

"Q. Mr. Riley told you that? A. Yes sir. He wanted also to know who I had in mind to sell this land to. He knew about Mr. Carothers, and I also had a man in Cisco in mind, that I didn't tell him about.

"Q. Have you ever told him about it? A. No, I never have told him, because *I didn't think him being a salesman for the company there would be any use.*

"Q. At any rate, did you discuss Mr. Carothers with him? A. Yes sir." (Italics ours)

Relative to the above testimony, other than that involved in the telephone conversation, there was no claim by pleading or evidence that Riley had any authority to employ plaintiff for defendant to procure a purchaser of the land. Plaintiff's testimony indicates that he did not understand that Riley had such authority. Under the decision already cited, notice to Riley was no notice to the defendant in the absence of evidence of his authority.

It is significant to note that all the services of plaintiff had been performed before the telephone conversation. There is no evidence that he did anything after that. Did the telephone conversation of plaintiff with Ferguson—assuming that notice to Ferguson would be notice to defendant—apprise Ferguson that Gay had purported to employ plaintiff for defendant to procure a purchaser for the land, or had purported as acting for defendant to pay a commission if he procured a purchaser? Did it apprise him that, in showing the land to Carothers that he was acting for defendant? We cannot escape the conclusion that every word of the conversation was just as consistent with plaintiff's interest in the transaction in behalf of Carothers, or other prospective purchaser, as in behalf of defendant. The subject of the conversation so far as shown was not the employment of plaintiff to find a purchaser, or to be paid a commission, but Gay's proposed terms of the sale of the land, which Ferguson rejected and repudiated. There was nothing in any of the information imparted to ·Ferguson by the telephone conversation reasonably to put him on notice that if he sold the land to Carothers, plaintiff would expect defendant to pay a commission.

Even if resolving all ambiguities and far-fetched inferences in favor of the view that by the telephone conversation plaintiff notified Ferguson that he had shown the land to Carothers *at the instance of Gay,* that was no notice that Gay had purported to bind defendant by such act. Although the evidence does not so show, it may be that Gay himself had authority to sell the land, or to procure a purchaser therefor. It would not follow that he had authority to bind the defendant by an employment of plaintiff to assist him. The situation would be analogous to that discussed in Williams v. Moore, supra, wherein it was pointed out that conceding the authority of the agent to employ a sub-agent, it would not follow that the sub-agent would be the agent of the principal. From the view point of Ferguson so far as the telephone conversation advised to the contrary, he may have understood that plaintiff was assisting Gay as sub-agent of the latter to procure a purchaser and yet, knowing that Gay had no authority to employ plaintiff for defendant, be justified in assuming that the matter was personal between Gay and plaintiff.

 "Ordinarily, as an unauthorized sub-agent can look only to his immediate employer for compensation, and if an agent in employing a sub-agent acts for himself and not for his principal, he is liable to his sub-agent for the latter's compensation; the same is true where the agent has no authority to employ a sub-agent * * *." 3 C.J.S., Agency, § 195, page 100; Mitchell v. Teague, Tex.Civ.App., 233 S.W. 1040, and authorities cited.

Although plaintiff, by his pleadings, alleged the contract, condition or undertaking of plaintiff to be "to sell the land" he also alleged the same interchangeably to be to *procure a purchaser.* It is very clear that there was no pretense of any contract to sell the land or that the thing plaintiff was to do was other than to find a purchaser. 9 C.J. 526, sec. 28. Merely to find a purchaser of the land with whom either Gay or the defendant could deal would be a ministerial act, involving the delegation of no discretionary authority, if any, of Gay. If, therefore, Gay had authority to sell the land or procure a purchaser for the land, he could have employed plaintiff just as plaintiff contends he did without that fact affording any evidence, either that he did have authority to employ plaintiff as the agent of defendant, or to charge

the defendant with notice of such a purpose or intention.

We are further of the opinion that there was no evidence to support the issue that plaintiff was the procuring cause of the sale of a half interest in the land to Carothers. The only relevant facts in evidence upon that issue were that plaintiff showed the land to Carothers and some months later Carothers with Grissom purchased the land upon materially different terms, the deal being handled through others. Plaintiff testified that he had talked to Carothers about the land before the time he claims he was employed by Gay; that when he was talking to Gay he knew "Mr. Carothers was in the market for land at that particular time." It is also inferable from his testimony that Gay knew of Carothers. Plaintiff said that when he mentioned Carothers to Gay, the latter said "that Carothers wouldn't buy it, wouldn't buy anything—just his opinion." Such an opinion implies some knowledge of the man. There was no evidence to show that Carothers was ready, able or willing to purchase the land, except the fact that he did purchase a half interest. It is as reasonably inferable that Grissom, or some third party, procured Carothers to join in the purchase with Grissom as that Carothers induced Grissom to join with him in such purchase. We have several times had occasion to affirm the proposition, in substance, that where the inferences to be drawn from facts are equally consistent with liability and non-liability, a question for jury determination is not presented. Metropolitan Casualty Co. v. Woody, Tex. Civ.App., 80 S.W.2d 771; Texas Pac. Fidelity Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050, and authorities cited. At least the evidence relied upon to support the issue that plaintiff was the procuring cause of the sale amounts, at most, to a mere surmise or suspicion of the fact. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

The allegation that "the defendant, acting through its president, one Ferguson, consulted and advised with plaintiff herein as to the sale of said land" was supported by no evidence. The telephone conversation lends no support to said allegation. The allegation that "the agreement for plaintiff's employment was known by the defendant and its president" was equally devoid of supporting evidence as already pointed out. The allegation that "the defendant with full knowledge of the agreement and employment of the plaintiff herein by said G. D. Gay, acting for defendant, accepted the fruits of the plaintiff's efforts" was without supporting evidence as to the "full knowledge of the agreement", or that Gay, in making the agreement of employment, was "acting for the defendant" or that there was any acceptance save the bare fact that Carothers purchased a half interest in the land. The allegation that defendant in accepting, as alleged, did so "knowing that plaintiff was in the real estate business" was entirely devoid of supporting evidence. There was equally an absence of evidence that defendant knew plaintiff was claiming a commission, the utmost extent of the testimony being to show that Gay, or possibly Riley, had such knowledge, but there being an absence of evidence to charge the defendant with such knowledge.

It, therefore, is our conclusion that the defendant's request for a peremptory instruction should have been given, that the judgment should be reversed, and, it appearing that the case has been fully developed, that judgment should be rendered for the defendant and it is accordingly so ordered.